Good morning, Your Honors. May it please the Court. Tracy Helmstenowski for the Appellant. This Court should reverse the Administrative Review Board's decision affirming the ALJ's decision and order and enter judgment in favor of CP for three independent reasons. First, the Board applied the wrong legal standard when it determined that Mr. Riley established contributory cause based solely on chain of events causation. Second, the ALJ's finding that CP acted in good faith at the time it investigated and suspended Riley with a time served suspension. A finding unappealed and left intact by the Board precludes a finding that CP acted with intentional retaliation. And third, the Board applied the wrong legal standard and made findings unsupported by substantial evidence when it determined that it would have taken the same action notwithstanding his protected activity. Let me address each of those in turn and I'd like to start with contributory factor. I'd first like to note that the Board's legal assessments are reviewed de novo in this regard and the Court can affirm only where the Board correctly applied the law and the Board and ALJ did not do so with respect to contributory the legal the legal findings are de novo. Oh no, when your third issue you were talking. Oh yes. I thought I heard you say it was clear clear error but that's not the standard. Correct, we they're unsupported by substantial evidence factually on the third issue but we also submit that there's a legal error there too. Your Honor, the ALJ in fact committed legal reversible error on contributory factor because he relied solely on chain of events causation in holding that Mr. Riley established contributory cause. The ARB confirmed this legal error when it also plainly disregarded this circuit's well-established legal precedent that to establish causation under FIRSA a plaintiff must prove intentional retaliation prompted by that employee's protected conduct. Counsel, is this really a chain of events case? I know that the the the agency said it was but I wonder whether this really is in the sense that this is unlike our other cases in which the investigation led to some other finding about an employee that that formed the basis for the for the discipline. Here it was a late filing or is the late filing of the protected activity itself a late so is this really a chain of events case? I believe it is your Honor and that's how it was presented certainly by the Mr. Riley throughout the case. He he pursued and attacked and challenged his case solely on chain of events and so this is it's also also known as an inextricably intertwined type case in contrast to the Kudak case let's say where the you know protected activity is so far unrelated to the ultimate discipline. So I do I do think he not only is a chain of events but the plaintiff here relied solely on that theory which if you look at the Seventh Circuit's case in Kosiara you know the plaintiff is master of his case and he lived and died by this chain of events argument which we would submit because of that he shouldn't be entitled to a do-over because the chain of events analysis here is clear error. This court has clearly and unequivocally held over and over again. So this is not a case where where the agency or the judge below pushed him to take a particular view because if you see if you see the the opinions below as you mentioned in your brief they seem to want to ignore some of our case law or at least amend it I would say and so this is a push this chain of events theory. Not only push it but it's solely relied on it. Okay. Yep this court has clearly had as I mentioned chain of events causation is legally insufficient we know that from the Blacker B-1 case, the Heim case, the BNSF versus DOL case. In fact in Blacker B-1 in the first decision there they expressly rejected adopting the Third Circuit more lenient standard in Urahu and expressly followed Kudak requiring intentional retaliation. In footnote five of this reiterated although plaintiff cites to Urahu which employs a more lenient standard we explained in Blacker B-1 that the Eighth Circuit follows Kudak not Urahu. This case law leaves no question your honors. No doubt that intentional retaliation is the legal standard in this circuit. Yet a review of the ALJ's decision and the ARB's affirmance are clear that the only findings made were chain of events to establish contributory cause. The ALJ's decision is unequivocal on this point. Page 14 of the ALJ's decision complainant need not demonstrate the existence of retaliatory motive. Neither motive nor animus is required to prove causation under FIRSA. This is clear legal error under Kudak and its consistent progeny. The ALJ further confirmed its legal reversible error by finding ARB's footnote 13 was even worse. Correct your honor I was just going to get there. Six or seven reasons that Kudak was wrong. It absolutely did your honor. Absolutely. I was going to go there very next. Footnote 13 is a is a directly in conflict. They're looking for for cert granted and destroy an unfavorable conflict in the circuits. Perhaps that's the case. We're just the middle station here. Clearly the footnote 13 is in direct conflict with your honor in this court the circuit's well-established law. And none of the government's argument arguments your honors can save that reversible and dismissible error. Inextricably intertwined the argument they make that's been rejected by this circuit. That's just another form of chain of events which has been clearly held insufficient. That doesn't carry the day. The government's attempt to claim that the ALJ relied on more than causation in fact is incorrect. And it asked this court to really rewrite the decision ex post facto which the court should decline to do. The government's argument that the ALJ didn't rely on only chain of events. It isn't supported by the record pages 14 and 15 is solely causation and fact analysis. Other arguments the secretary seeks to rewrite into the ALJ decision ex post facto which we urge this court to decline. Timing. The secretary claims that temporal proximity supports a finding of intentional retaliation. The government concedes though that the ALJ did not use temporal proximity in its contributory analysis. And it was error for the board to fill in those findings as this court properly held in the VNL versus DOL case. Moreover because the ALJ didn't. I understand why the why your client why the CP having fired Botman or whoever and decided and not to fire Riley would then look for an alternative discipline. But why late report? And why 47 days without pay? So that strikes me as irrational and punitive. The the it's the prompt reporting they fail to you know the rules require that you promptly report both at your first means of communication and you know by the end of the shift. And so didn't even care. Well which wasn't a finding made by the in terms of the manager the testimony that that's cited to yeah. I mean that's the evidence. So the 47 days comes about because the court or the when the carrier issued that ruling. Keep in mind it was a time served suspension. It could have been 35 days. It could have been 20 days. The ultimate discipline ended up being however long it took. They removed both of them from service. At the time they reasonably had legitimate reasons to notice them for investigation. It just so happens that that hearing and and decision time took 47 days. That's how they came to the 47 days. They need to. So so I mean and they didn't have to do that equation either. Whose testimony do I read to get the the reasoning of the decision makers on this penalty? The the evidence in the record would show that Mr. Morris was a hearing officer. He wrote a recommendation and then forwarded that recommendation to Mr. Cork, his supervisor, Jennifer Mance who served as the labor relations review and Jerry Peck. Morris testifies to those would have been the three individuals who would have subsequently reviewed that. Now your honor what's in the record. Any of those three testified? They did not your honor. So they were no longer employed at the company at the time. We have documentary evidence showing that that Morris completed his recommendation. He actually recommended dismissal for both Bowman and Riley for all the violations alleged including the altercation. But then subsequently upon that multi-level review it was determined that to exercise leniency as to Mr. Riley it's undisputed that Mr. Riley stood for dismissal given his prior disciplinary record. Let's suppose that we put aside this FRSA statute and we're we're just looking at Mr. Riley's situation and he he has been um there's certainly a good case that he's been excessively disciplined at least from the standpoint of the the duration of it. So what are his remedies? The remedies aside from the first. Other than to look look away from the collective bargaining situation and and seek some federal. He has a direct remedy under the collective bargaining agreement and he actually exercised it and and he received a reduction of the suspension to 15 days but the court affirmed that the that the carrier was correct and substantial evidence supported the violation for prompt reporting of the injury. So they affirmed the 15 days was reduced the 47 to 15 ultimately. So he has received pay for the other 32 days? He did yes and that's of the record and and the and the board still imposed a 47-day remedy? The board um the ALJ did award the 11,000 the full 47 days in back pay you mean? Yeah they did and then subsequent to that um CP made a motion to correct and clarify that based on the um carrier's decision that reduced it to a 15 day to avoid a windfall because he had received you know 47 days of back pay as part of the damage award by the ALJ. Okay so we're just looking at 15 days from correct from his standpoint? Correct yes. Counsel you were you were talking about the the recommendation how the recommendation made its way up the chain? Correct. But who was the ultimate decision maker? Well um the record is the best we have in the record of this is that it would be reviewed by the two managers Mr. Cork, Mr. Peck who was above Mr. Cork and then labor relations with Jennifer Mance. But we really don't know who the decision maker was right? Correct we have these three individuals who reviewed it but I mean from an authority standpoint Mr. Peck was above Mr. Cork but yes there's nothing beyond the recommendation and Mr. Morris's testimony. So if that's the case you mentioned at the very beginning what the uh what disposition you would ask us to make here um and I thought you said that it should it should go back and with a determination here ultimate determination of the case in favor of the railroad? Correct. Right? Correct we think two levels dismissal and at minimum a remand given the improper legal standards. What about what about if it went back with uh if it was vacated went back with instructions to apply the correct standard? Is that another option or why isn't that the appropriate? That is that it would be the alternative request it's both we think as a matter of law dismissal can be made based on the minimum certainly given the contributory factor legal errors on the reversible error at minimum a remand is necessary because the ALJ did not conduct critical factual findings weighing credibility looked at the various factors that are required under the proper legal standard and this court did so in the BNSF versus DOL case. So if it went back with instructions to apply the correct standard but we don't know who the decision maker is where does where does that show that a multi-level review process was conducted that these individuals reviewed it and that they exercised leniency towards him um the plaintiff didn't call these individuals either um and and I think more so on on his part because it's his burden to show intentional retaliation well why don't we know who the decision maker is does the railroad is there some kind of obligation of the railroad to be forthcoming here and explain to the decision maker the the legal decision maker here who what happened here who who made the ultimate decision yes I think I think you can glean it from the record from Mr. Morris's testimony that these were the three individuals who would have had to review it and given Mr. Cork and Mr. Peck are Mr. Peck would have I mean knowing their their um managerial titles he would have been above Cork um Mr. Peck would have been last to review and what's important there too is Ms. Mance were provided the labor relations review which certainly gives an independent review aside from managerial review how do we how do we dismiss it though and I want to get back to Judge Loken's question if this if if this is arguably punitive um because of the protected conduct or at least we can say 47 days is arguably excessive how can we say as a matter of law that the railroad would have made the same decision in the absence of protected conduct I would love to get to a firm of defense so thank you so much for going there your because I have two very critical points to make on affirmative defense and they are this Bowman is your operative comparator in this case your honors he is a union employee like Mr. Riley both engineers governed by the same CBA both involved in the same incident same day same shift both were noticed for hearing under the collective bargaining agreements for the exact same alleged rule violations and where the ALJ departed in error was the ALJ looked at the two letters the suspension letters Mr. Riley's suspension letter Mr. Bowman's dismissal letter Mr. Riley had a statement about the fact he was found that he did not promptly report his injury Mr. Bowman did not but Mr. Bowman's dismissal letter had multiple rule violations that the carrier determined he had violated two of those rule violations are the prompt reporting roles but even so even so that gets back back to my question if we view it as excessive it just a matter of law I think in terms of the excessiveness I think that's a determination where you're getting back at I would fear that as a court you the court has often stated it's not your role to act as a super personnel department and re-examine those decisions and I think that given that the carrier and this ALJ found that the CP acted in good faith when it disciplined him for the 47 days they actually he actually made a finding of good faith and so I to re-examine the 47 days is getting back into acting like a super person one more question which is don't we have a problem too in deciding this is a matter of law so if you look at the BNSF case that was a summary judgment motion the district court we were looking at a district court record as I recall here we've got an agency record so shouldn't we send it back to the agency for a determination in the first instance in other words at a minimum you're on it yeah at a minimum correct and but I mean it might have been Kudik I was talking about but yeah no you're correct that's correct yeah but if I just might finish about the the Bowman issue Bowman was disciplined for and dismissed and he had no protected activity he had less discipline I think that the record under the court's indicia that looks at under Kudik for affirmative defense when you put Bowman and you correct the error that this ALJ made he was disciplined for the late report as well and then the managers your honor were not proper comparators on the affirmative defense they're different roles but Mr. Morris the testimony was elicited from Mr. Morris he's a hearing officer he had no supervisory disciplinary authority over these managers he doesn't work at the same location and so he was not he didn't have any personal knowledge as to whether they violated anything or were disciplined or not he testified I'm not aware none as to what I'm aware so that whole testimony was elicited in a very hypothetical lots of assumptions that we don't think are supported by the record so Bowman is your comparator when you correct that error I'm sorry I exceeded my time I'll reserve any balance if there's any at the end thank you your honors thank you Ms. Macdonald good morning may it please the court my name is Mary Macdonald and I represent the secretary of labor Mark Riley was assaulted by a co-worker while on duty and later that same day reported both the incident and his resulting injury let me ask you a question before you I mean we know all the facts for one thing but you may want to think about this would your client prefer to have us follow our law and reverse so that it's timely to bring a cert petition claiming a conflict in the circuits and we're all wrong or would would your client prefer to have it sent back with instructions to apply our law to this record which I think their answer would I know what they what answer they'd want to give question would be could they possibly shape it to do that but why would they want that the ARB or the secretary of labor your honor the ARB I believe in footnote 13 was seeking clarification of this court standard they didn't need it that's that's you know I'm sorry but that doesn't pass the chuckle test well they certainly that footnote is crystal clear that we were wrong and you we've told you before we were wrong and we're going to tell you again you were wrong from cutic to all the cases following cutic it's certainly questioned this court's holding why wouldn't your client want to just get just have us say no you know you didn't follow the law here and go take it up well respectfully your honor the ARB noted an important point which is that the terms intentional retaliation and retaliatory motive are often used interchangeably but sometimes they seem to mean different things and railroads and in my office's experience railroads across the country have seized upon those terms to create a standard that is virtually impossible for whistleblowers in the railroad industry to meet and that's essentially to require a whistleblower to have smoking gun direct evidence of the railroad's hostility or animosity in footnote 13 I believe that the ARB was pointing out that such an interpretation is contrary to congress's intent in creating the contributing factors realities though we had two union members get in not a fistfight but an all a physical altercation while driving a huge train now the railroad has every interest in having that reported so the notion the notion that a railroad would retaliate against people for reporting an unsafe situation in which it's union members fighting with each other when the reason they don't report is to cover up for each other because they know the discipline that's coming this notion that this was a safety retaliation for late reporting is frank it is just so counterintuitive I consider it absurd the railroad would want that to be reported and they'd want to know right away because their equipment was being used in a way that created a hazard for countless persons and property I certainly agree your honor and and the the lower courts how can this be how can this be illegal retaliation when it's so counterintuitive though it's not just that the chain of events in an inextricably intertwined is is mumbo-jumbo it's that it's in this situation totally counterintuitive well I agree that workplace violence creates a hazardous safety or security condition which is why reporting it is protected activity under the FRISA however here Mr. Riley was not actually found guilty of any rule violation relating to the physical altercation Mike Morris the hearing officer he he's own the only rule violation for which he was found responsible was late reporting how many fellow workers urged him to report this when they heard about it several right and and he did in fact report it but he didn't he didn't want to because he wanted he wanted the he didn't want the other guy to get in trouble or himself so he wanted he wanted to conceal from the railroad a serious safety problem and now the railroad is being punished for for retaliate for anti-safety retaliation well respectfully your honor the railroad is why can't we apply a little common sense here well the railroad isn't being punished no punitive damages were assessed Mr. Riley come on Mr. Riley has I didn't mean it I didn't mean it in the punitive damages sense they're being punished they're being spanked for violating a safety law your honor by the U.S. Department of Labor well we believe that this is a case in which protected activity did contribute to the adverse action and I would note while certainly the railroad has the right to enforce legitimate safety rules congress made it very clear that they okay inextricably intertwined I would if let's suppose that when he was finally persuaded to report Riley had filed a false report as to what happened and he had then he was then disciplined either for lateness or falseness or and he files he brings this action well the punishment was inextricably intertwined wasn't it if he hadn't filed a false report there wouldn't have there wouldn't have been a there wouldn't have been discipline isn't this taking the the but-for causation notions to a ridiculous extreme well the department wouldn't find contributing factor in that case that would be similar to the why the inextricably intertwined theory which they thought makes this an open and shut case doesn't apply well as a threshold matter there would be no protected activity in that case complainants have to have a good faith belief he filed a report but it wasn't done in good faith so under for example the seven circuits armstrong decision that wouldn't qualify as protected activity but moreover that would be a case that's more similar I would argue at least to to be an reason why the railroad took the activity and in that case it would be the dishonesty or the false reporting itself if there's nothing intervening the report is the but-for reason for the ultimate discipline but it wouldn't be the proximate cause in that case it wouldn't be the legally significant reason the legally significant reason that presumably would wipe out the contributing factor showing I'm sorry what's the difference between false and late well false would imply that the complainant did not have a good faith belief and once again did not actually might have been completely different it might have been it might have been this was a serious safety problem but it wasn't my fault or it was a third employee's fault and the railroad investigates and found that yeah you you know you may you made a safety report you had to make but it was completely wrong so you're being we're gonna you're we're gonna discipline you yeah well I think in those circumstances that different from saying yeah you made a safety report but it was way too late so we're gonna discipline you I believe that the board would find in that case that the falsity of the report would likely overcome the showing of contributing factor causation however even if it were give me a board site to support that I don't have a board site on point for that and we're just speculating we would speculate but I think even under the railroad would prevail at the affirmative defense stage even even if in that case the complainant satisfied the contributing factor test let's assume that you're right and that that there's a more direct causal link here because of the filing of the report and the lateness the report kind of go together the problem I'm still having with your argument is the face of the ARB order which says essentially says we're going to apply a chain of events theory they said it the ALJ said it and that's not the law in this circuit and so don't we just have to send this back and sure the ALJ and the and the ARB can say the same thing you're saying on remand but don't we at least have to send it back so they apply the right law we think there are sufficient factual findings that were made in this case that would support affirmance of the ALJ and ARB decisions the ALJ and ARB did not solely rely on chain of events causation there was cabining language that they were the ALJ and ARB acknowledged that chain of events alone may be sufficient but it doesn't automatically per se establish causation and they found other facts that are highly relevant and you don't think that that that particular thing that you just said that it that it that it's relevant is a problem in light of our case law in other words how do we know that that didn't sort of affect the rest of the analysis of the ARB thinking well chain of causation or chain of events is good and therefore we don't have to make the findings we would normally make well this court has said that chain of events and inextricably intertwined analysis is not alone sufficient to satisfy contributing factor not that it's irrelevant so i think the fact that the ALJ and ARB found those things in addition to other facts that are equally important um can satisfy the contributing factor test for example here it's relevant that the railroad had knowledge of the protected activity and chose to discipline Riley solely for the late reporting violation despite Mike Morris's recommendation that other rule violations be assessed there's also strong temporal proximity Mr. Riley was pulled out of service less than 24 hours after he engaged in protected activity the ALJ and ARB also expressed skepticism regarding the reasonableness of the railroad's determination that the report itself was untimely they found that Mr. Riley had made efforts to make the report as soon as he felt physically safe to do so you you rely on the the temporal proximity but the temporal proximity also works against the argument in the sense that they needed to investigate now maybe 47 days was too long to investigate but when you have a serious safety issue on the railroad they need to figure out who's at fault and whether it's safe to put either one of these back on the railroad immediately so doesn't that cut against the argument you're making it's certainly true that the the suspension uh while an adverse action isn't the relevant adverse action here the relevant adverse action is the discipline we don't we don't disagree that there were reasons why the railroad needed to investigate the incident based on the evidence that it had but even the 47 day span that elapsed is temporally approximate particularly in light of the fact that there were no inter independent intervening events that occurred the railroad hasn't proffered or put forward any other reasons why Mr. Riley was disciplined in this well I was just going you you seem to place a lot of emphasis on the 24 hours and the 24 hours doesn't seem real the incident we agree and we don't disagree that they needed to investigate other facts in the record though that do support the finding of contributing factor here include the fact that the Canadian Pacific's reporting policy was inconsistently applied and the railroad hasn't presented any evidence that it regularly monitored for compliance with its prompt reporting rules or that a 47 day uh suspension would be reasonable or routine or a customary punishment for this kind of violation and in fact labor relations manager scoots actually testified that he wasn't aware of any other employee who had ever been assessed comparable discipline for a similar violation all of these facts are relevant and support the ALJ and ARB's findings of contributing factor causation moreover substantial evidence supports their conclusions that the Canadian Pacific did not show that it would have taken the adverse action absent the protected report in this case we believe that Canadian Pacific's inability or unwillingness to identify the final decision maker in this case presents a significant hurdle to their ability to satisfy the affirmative defense with that I'd like to yield the remaining three minutes of my time to the interveners council why couldn't why couldn't discovery have probed that I believe I believe the railroad did not produce there's no evidence in the record as to the decision maker's identity which presumably one would think the railroad would have in its records but perhaps did not well I don't know who the adversary was in the hearing process whether it was labor department or or Mr. Riley's attorneys but wasn't there wasn't there the ability to find out that send them a interrogatory do a 30 you know a 30 v6 deposition and that would have been Mr. Riley's attorney um all I know is that in the here we only know two things about the final decision maker the first is that they disregard disregarded the recommendations of Mike Morris and two that in their letter they state that they reviewed the investigatory hearing transcript which is recommendation to fire correct um and the transcript that was reviewed is full of references to protected activity so we all we really know about the decision maker is that they knew that protected activity existed and that that was something that influenced the final decision and unless this court has more questions for me I'd like to yield some time to the intervenors council thank you your honors good morning your honors may it please the court uh my name is Corey Kronzer I'm here on behalf of important first cases that has been what's your client's stake in the game besides 15 days pay your honor his stake in the game is that if this court finds that what the railroad did was okay all the railroad employees under this court's umbrella are in danger of being terminated because solely of engaging in protected activity what the railroad is asking this court to do is allow them to I don't understand what what's is miss is Mr. Riley a a union officer or what uh he's not an officer he's a member he's a great American and he wants he wants to help the world oh I don't that that's not a that's not a litigation stake in the game it sounds to me like it's 15 days pay well your honor I will say he was held out 47 days for the timeliness in essence he was fined 11 000 because you're saying now that the 47 days was a violation of the act diamond took to investigate your honor the the thing is is may have been unreasonable but that was time investigation well your honor the law explicitly says that well you're right your honor the 47 days but then the decision to not give him his back pay in full the back pay he got from the public law board was a year later and it was not even the full and also the law is clear wait a he was held out of service for 47 days and then and then they said hey we found we decided that you didn't report on time so we're gonna say hey time served but okay 15 days with interest I'm still I'm missing something your honor the um so the public law board which uh the railroad uh mentioned is a different avenue uh it's a union appeal it's different than a I've been through um and it came a year later and so and it was based off of uh they said 15 days was okay and they said you can award him the remainder of his back pay in that case so the public law board said okay 15 days fine to investigate dollars and cents what's he out other than 15 days pay plus interest uh eleven thousand dollars minus uh public law board's award of six grand and so so he's out about four thousand dollars and in your honors but what's so important here is that the law is clear and the law was enacted because congress looked at how the railroad treated its workers and said hey the business decisions it's not there you cannot punish an employee for engaging in protected activity there's not a time requirement and what the railroad is asking this court to do is allow them to pass their own rules this is the railroad's saying you have to follow our requirements to engage in protected activity if you don't well fine you engage protected activity but we're going to discipline you for breaking our own rules con they are not required to have this rule this is their rule that they're upset about it what's wrong with that though i mean suppose that they they had a rule that was more lenient and said you have to you know do it within seven days report report an altercation i mean you know that's a reasonable rule they can they can set up rules so that they can promptly investigate and take care of any any problems that are happening safety wise no i would agree your honor hey but the fact is that this is not uh a case like the department of labor where they investigate an altercation if his notice letter had said we're looking into your involvement in the altercation that'd be one thing but his notice letter said we're looking into two things you're involved in the altercation and your failure to promptly report when you told us the same day that it happened from the very outset the railroad was looking into his timeliness of his report and then ultimately said hey we don't think you same day or next day july 5th uh at 2 a.m is when the altercation happened and he told his manager i am to what noon or 2 a.m and interestingly enough your honor it was roughly a 10 hour gap and mr riley was on shift for 11 hours so if the incident happened at the beginning of shift and he reported at the end of shift well that would have been a greater amount of time but the railroad doesn't there's not even a discipline policy in the record there's nothing that the railroad can point to that says this is okay there is nothing there's a decision makers there's no identity of them there's no discipline policy in the record their alleged rule violation says immediately but then they sit there and say promptly it's a subjective interpretation that's that's all that's all bargaining or even grievance arguments i would respectfully disagree with a little bit of the rule implementation i know how it gets i know how it's gotten twisted around to being stuffed into a safety pigeonhole your honor is the the rule that they cite to is is under the g corps the general code of operating rules which is a set of rules uh and adopted by not all the railroads in the united states but a fair amount of them then the railroads enact their own discipline policy a lot of them incorporating those rules the g corps is not a discipline policy there is no discipline policy in this record to support any uh arguably to support any discipline whatsoever the last chance agreement says please see our discipline policy when that's not an frsa argument it's not even frsa issue it goes to the issue that that he took his remedy he invoked his collective bargaining rights and um right employee rights and got relief well the statute does say you can't waive your your first uh uh right so the railroad worker can argue thank you your honor miss daneski use your time she did i gave you i'll give you a couple minutes for a bottle thank you i just was going to make one point which is just that this record to the government's argument that the record has sufficient findings in the record to affirm it simply does not we brief that issue exhaustively in our reply brief as to the reasons why and just by virtue of example the temporal proximity argument the r the arb and the lj that's the arb who relied on to try to fill in that finding in its board decision the lj made no discussion no findings about temporal proximity but the reason even that alone isn't sufficient to affirm is this court has repeatedly held timing alone even on an intertwined case isn't enough standing alone and in this case this court has also said that temporal proximity the probative value is decreased significantly when as here the plaintiff has prior discipline in their record this mr riley stood for dismissal at the time he was reinstated to the company he stood on the last chance agreement he was already at the dismissal stage and as says and as to the fact the decision maker didn't follow the recommendation he didn't follow it in mr riley's favor how can that be evidence of intentional retaliation the findings aren't sufficient to affirm um as the government argues and and i'll rest on that point thank you thank you counsel